## COMMONWEALTH *vs.* BENJAMIN F. FIELD.

The superior court have authority to allow a commissioner, specially appointed to take a recognizance from a person under indictment, to file an amended return thereof, setting forth a different contract, three years after the filing of his original return, after the parties to the recognizance have been defaulted, and after an action has been commenced thereon; and such action may thereupon be maintained by proof of such amended return.

If a person under indictment for assault, abduction and kidnapping has been committed to jail upon a *mittimus* which contains an order for his commitment for failing to recognize with sureties to answer to an indictment for kidnapping, a recognizance afterwards taken with condition that he shall answer to an indictment against him for assault, abduction and kidnapping is valid; although after the taking of the recognizance but before the sureties therein are defaulted the charge of kidnapping is abandoned.

Under the Gen. Sts., the superior court have authority to require a prisoner who has filed exceptions after a verdict of guilty has been returned against him, to enter into a recognizance to appear from term to term in that court, to answer to the indictment.

CONTRACT upon a recognizance. This was one of the two actions the decision in which is reported in 9 Allen, 581.

After that decision, a motion was made in the superior court, before *Lord*, J., at May term 1865, for leave to file an amended memorandum of the recognizance, and this motion was allowed, and the following memorandum of the recognizance was accordingly filed:

" Commonwealth of Massachusetts. Superior court, Essex, ss. In vacation after January term, A. D. 1862. On this twenty-seventh day of February, A. D. 1862, personally appeared Amos R. Nickerson as principal and Benjamin F. Field of Boston and Isaac H. Hazeltine of West Newton as sureties, before me duly authorized hereto, said Nickerson being now in the jail in Salem in said county, committed there under a *mittimus* from said court for failing to recognize in the sum of $8000, as ordered by said court, on an indictment against him pending therein, numbered 784, and acknowledged themselves to be severally indebted to the Commonwealth of Massachusetts in the sums following, to wit: the said Nickerson as principal in the sum of eight thousand dollars, and the said Field and Hazeltine severally as sureties in the sum of eight thousand dollars, to be levied on their goods or chattels, lands or tenements, and in want thereof

upon their bodies, to the use of the said Commonwealth, if default be made in the performance of the condition hereunder written.

" The condition of this recognizance is such, that if said Nickerson shall appear at the next criminal term of this court for said county to be holden at Newburyport, in and for said county, on the second Monday of May next, and from day to day during said term of this court, to answer to an indictment pending therein against him for assault, abduction and kidnapping of one Rice as set forth at large in said indictment, and shall also appear from term to term of this court, for the transaction of criminal business, if the same shall be continued, until final judgment shall be rendered thereon, and not depart without license, but shall abide the final order, judgment and sentence of the court therein, then this recognizance shall be void; otherwise shall remain in full force and effect. Asahel Huntington, commissioner specially authorized to take bail in the premises."

The case thereupon proceeded to trial, before the same judge, without a jury, and the following facts were found to be proved by the evidence :

At January term 1861 an indictment was found against Nickerson and Edwin P. Smith and Caleb B. Watts, for assault, abduction and kidnapping, upon which the two former were tried and a verdict of guilty was rendered at January term 1862, to wit; in February 1862. (See 5 Allen, 518.) Exceptions were taken, and Nickerson ordered to recognize in the sum of $8000, with sufficient sureties in a like sum, to appear and answer to said indictment at said January term, and at any subsequent term to which the indictment might be continued, and so from time to time and from term to term until the final decree, sentence or order of the court thereon, and to abide such final decree, sentence or order ; and Asahel Huntington was authorized to take the recognizance in vacation. Upon failure to recognize as ordered, Nickerson was committed to jail by virtue of a *mittimus* which ordered the jailer to hold him until he should recognize to appear and answer to an indictment wherein he was charged with the crime of kidnapping ; and the court

adjourned without day on the 24th of February, and on the 27th
of February 1862, at the jail in Salem, before Mr. Huntington,
Nickerson as principal and the defendant Field and Isaac H.
Hazeltine as his sureties recognized to the Commonwealth sev-
erally in the sum of eight thousand dollars, in the manner and
upon the conditions set forth in the new memorandum of recog-
nizance filed by Mr. Huntington, and copied above.  Nickerson
was discharged from custody on the same day, and Mr. Hun-
tington (being clerk of the court) on the same day made the
following entry upon the docket of the superior court: "Defts.
A. R. N. and E. P. S. as prs. each in $8000; Benj. F. Field
of Boston and Isaac H. Hazeltine of West Newton, sureties
for each of prs. in $8000 rec. severally in jail, Feb. 27, 1862,
and discharged on their several recognizances.  A. H. Commis-
sioner."  At May term 1862 Mr. Huntington filed a paper pur-
porting to be a memorandum of said recognizance, and the filing
of the same was minuted upon the docket.  The exceptions
taken as aforesaid were overruled in March 1863, as to the first
count of the indictment; (See 5 Allen, 518;) the indictment
was continued until May term 1863, when a *nolle prosequi* was
entered as to all but the first count, and Nickerson was called
and defaulted on his recognizance; and the indictment was fur-
ther continued until October term 1863, when the sureties were
called and defaulted on the recognizance.  The memorandum
of the recognizance filed in May 1862 was the only one filed in
the case until May term 1865, when Mr. Huntington was allowed
to file an amended memorandum, as before stated.

The defendant excepted to the allowance of the motion for
leave to file the amended memorandum; and also objected to
the sufficiency of the evidence to maintain the action, upon the
following grounds:

1. The recognizance was not one which the superior court
had authority to order or require, because the prisoners should
have been required to recognize to prosecute their exceptions in
the supreme court, and not to appear from term to term in the
superior court.

2. The amended recognizance, filed after the commencemen

**of** this action, is not admissible in evidence, and sets forth and describes an entirely different contract from that set forth and described in the original memorandum, which was the only one on file for three years and more after the recognizance was taken, and the court had no right to allow such amendment, to affect the rights of the defendant.

3. The commissioner taking the recognizance had no authority to take the recognizance set forth in the amended memorandum, in this, that the principal Nickerson was committed to jail, as appears by the *mittimus*, for failing to recognize with sureties to answer to an indictment against him for the crime of kidnapping, and the recognizance taken, as appears by the said memorandum, is conditioned that the principal shall answer to an indictment against him for assault, abduction and kidnapping of one Rice, and more especially as it appears from the records put in by the Commonwealth that before any default of the defendant the charge of kidnapping against said Nickerson was discontinued and abandoned.

But the judge ruled that the Commonwealth could maintain the action, and ordered judgment to be entered against the defendant for $8750. The defendant alleged exceptions.

*J. G. Abbott,* (*D. Saunders, Jr.,* with him,) for the defendant. The superior court, under the circumstances, had no authority to allow the amendment, so as to affect the rights of the defendant. Three years had elapsed after the filing of a memorandum, full and perfect in all its parts, which became a matter of record, and by which the parties to the contract so recorded had a right to consider their liabilities fixed and settled. Upon this memorandum the defendant had been defaulted, and this suit was commenced and prosecuted until a decision was had that the contract which it described was one which the commissioner had no authority to require. The new memorandum is in no respect an amendment of the former one ; but it sets forth a new and distinct contract from that set forth in the former one. The only cases where an amendment of a memorandum of a recognizance taken by a commissioner has been allowed, have been to enable him to make a new memorandum, more full and complete ; not

one setting forth a different contract. *Commonwealth* v. *M'Neill* 19 Pick. 127. *Commonwealth* v. *Merriam,* 9 Allen, 371. But there is no case where an amendment has been allowed, setting forth a new, different and inconsistent contract. And it would be highly dangerous to permit a commissioner, three years after returning into court his original memorandum, to make a new one, from memory, describing a different contract, and file it as a record by which the rights of parties are to be governed. It is a record of what takes place in the country, after the adjournment of court, and of which the court can know nothing except from the memorandum. In this case it is certainly safer to take the original recollection of the commissioner. During three full years the contract now relied on remained in the breast of the commissioner, and depended on the mere recollection of a ministerial officer. It is against the policy of the law to allow such an officer to come in, after the lapse of so long a time, and file a new contract, inconsistent with the contract formerly set forth.

The new memorandum seriously affects the rights of the sureties. They had a right, by Gen. Sts. *c.* 170, §§ 42, 43, to surrender their principal by leaving a certified copy of the recognizance with the jailer. Their only evidence of the recognizance was the record. For three years, by the record, their recognizance was void. If void on the face of it, they would have no right to take their principal and surrender him. By this record of a void contract the sureties were bound for three years, and until it was too late to protect themselves; and then it was proposed to make a new record and by it to charge them for the first time, when their power of protecting themselves was gone. Yet both principal and sureties were bound and are presumed to know the law. So long as the original memorandum stood, therefore, this defendant was justified in not attempting to protect himself; he was guilty of no laches in not surrendering his principal; and he had no right to do it.

This action cannot be sustained on the new memorandum. It was commenced on the original memorandum; and upon that the defendant was defaulted. There has been no default upon the contract now set up. The default that was entered

was upon a different and an illegal contract; and of course it was no default.

The recognizance as now set forth is one which the commissioner had no authority to take. He should have followed the *mittimus.* He was a ministerial officer. On complying with the *mittimus,* the prisoner was entitled to his enlargement. If anything more was required of him, such requirement was illegal. *State* v. *Buffum,* 2 Fost. (N. H.) 267. The recognizance sets forth two crimes not alluded to in the *mittimus.* The defendant could look only to the *mittimus.* He knew that the charge of kidnapping could not be sustained, as the court have decided. He knew that it was safe to agree that the prisoner should answer that charge; and he had a right to suppose that if any other charge was put in by the commissioner it would render the whole contract void.

The court had no authority to require such a recognizance as the one now relied on. The order should have been that Nickerson should recognize to prosecute his exceptions. This clearly would have been the proper order, prior to *St.* 1859, *c.* 196, creating the superior court; and it is so still. See Gen. Sts. *c.* 115, § 12; *c.* 173, §§ 9, 10. The provisions of Gen. Sts. *c.* 115, § 12, do not apply to criminal cases. See *Commonwealth* v. *Bestin,* 11 Gray, 54; Gen. Sts. *c.* 170, §§ 39, 46.

*S. B. Ives, Jr.,* for the Commonwealth. The superior court had power to allow the amendment. It was a record of its own, made by its own clerk or its own commissioner. *Balch* v. *Shaw,* 7 Cush. 282. *Fay* v. *Wenzell,* 8 Cush. 315. If not allowable on this ground, the case is within that class of cases in which officers have been allowed to amend their own returns, or in which the discretionary power of the court to allow or refuse such amendment has been affirmed. *Hitchings* v. *Ellis,* 1 Allen, 476, and cases cited. *Baxter* v. *Rice,* 21 Pick. 197. *Thatcher* v. *Miller,* 11 Mass. 413. The lapse of time affects only the question whether the court properly exercised its discretion. The relation between principal and surety depends on the actual contract between them; not on the record evidence of that contract. No record of the recognizance is essential to

this. While Mr. Huntington was walking from the jail to his office, was there not a recognizance? A recognizance is seldom extended until it is necessary to sue upon it. But at all times after the verbal recognizance is taken the parties are held. And if so, it makes no difference whether the amendment is made *pendente lite,* or only after default. The default fixes the rights of the parties; and the default is upon the recognizance, not on the memorandum of it. And the suit is also upon the contract; and the memorandum is merely evidence of the contract. It is true that it is the only competent evidence; but does it therefore follow that any particular memorandum is the only competent evidence? The question is, what was the contract? See *Commonwealth* v. *Merriam,* 9 Allen, 371; *Commonwealth* v. *Nye,* 7 Gray, 316; Gen. Sts. *c.* 170, § 49.

It was within the authority of the superior court to require the parties to recognize to appear further in that court. Gen. Sts. *c.* 114, §§ 11, 12; *c.* 115, § 12; *c.* 112, §§ 11, 26, 33, 35, 36; *c.* 170, § 39; *Joannes* v. *Underwood,* 6 Allen, 240.

DEWEY, J. In the aspect in which this case now presents itself, the first question proper to be considered is as to the competency of the amended memorandum of the recognizance filed by Mr. Huntington, the commissioner, by leave of the superior court at May term 1865. This recognizance, as now extended, is in correspondence with the declaration, and is not open to the objection taken to that filed on May 12th 1862. This amended recognizance is objected to by the defendant, as setting forth a different contract from that stated in the former one, and as having been allowed after the commencement of the present action, and after the lapse of a period of three years from the time when the former recognizance was filed. The facts upon which the objection is raised duly appear, and the question is merely as to their legal effect.

If this can be treated as an ordinary amendment of the records of the court or of an official return by an officer, clearly the decisions of this court would sustain it. The lapse of time would furnish no legal objection to it, although it might call for great circumspection before granting it. Nor would it be a

valid objection that it was done after the commencement of the action, or that it affected the legal rights of the parties, and changed their liabilities from what they would have been before the amendment. *Balch* v. *Shaw*, 7 Cush. 282. *Haven* v. *Snow*, 14 Pick. 28. *Johnson* v. *Day*, 17 Pick. 106. *Baxter* v. *Rice*, 21 Pick. 197.

It would seem, therefore, that if the recognizance had been wholly a proceeding in court, and if it was to be treated as the ordinary records of the court, there would be no question as to the amendment allowed by the court. The commissioner seems to have assumed that it was so, and, being himself the clerk of the court, made brief entries of his doings upon the docket, as he would in other cases. In fact, however, the recognizance was taken by Mr. Huntington as a special commissioner appointed by the court to take this particular recognizance, the order for recognizing having been given by the court, and the amount thereof fixed by the order. Under this order, three days after the adjournment of the court, the commissioner, at the jail, upon the request of the principal, Nickerson, took a recognizance and noted the fact of so taking it upon the docket of the clerk, under the case on the docket, and on the 12th of May 1862 filed an extended recognizance. This extended recognizance, in the form set forth, was found not to correspond with the order of the court, and, as the commissioner represented to the superior court, not to be a correct extension of the one actually taken, and he asked leave, upon discovery of this fact in 1865, to file a true extended recognizance, and one corresponding to that actually taken by him ; and the superior court, being satisfied of the truth of such representation, allowed the same, against the objection of the defendant. The fact that there has been ostensibly a full and correct recital of the proceedings in the original return of an extended recognizance does not prevent the making of an amended return at a subsequent time, if the first be in fact erroneous. The case of *Commonwealth* v. *M'Neill*, 19 Pick. 127, was that of a return made by a lower court to a higher one of an extended recognizance, and where the objection to a material change in the same would seem much stronger, but the court

below was allowed subsequently to send up a more full and perfect recital of the actual recognizance. The case of *Commonwealth* v. *Merriam*, 9 Allen, 371, is however more analogous to the present case, being that of a recognizance to appear at the same court that ordered it, and it was also a recognizance taken by a commissioner of the same. A second extended return, correcting certain imperfections in the first, was allowed to be made by the commissioner, after the parties had been called and defaulted on their recognizance. That case we think substantially settles the question of the right of the court to give full effect to the amended return. It differs from the present case in this, that here it was after the commencement of the suit, but in that it was after a default, which is an equally essential part of the proceeding necessary to charge the party.

The principle upon which this right to make a second extended return rests seems to be, that the binding effect of a recognizance does not depend upon its being fully written out when the party recognizes. The briefest memoranda as to the fact, made by the clerk, or a commissioner, if taken out of court, are sufficient to authorize the party taking the same to make a full return subsequently, and, if this be imperfectly or erroneously set forth, to amend the same according to the truth, and return the same in accordance with the actual facts.

In the present case, the commissioner had the brief memoranda made by him, either as clerk or commissioner, containing an order of court to take the same, on the 24th of February 1862, and showing that a *mittimus* duly issued, and that Nickerson and Smith, as co-defendants in this indictment, were on the 27th of February in jail, and discharged on their several recognizances; and also the first return of an extended recognizance filed May 12th 1862.

The superior court, at their term holden in May 1865, finding upon satisfactory evidence that the recognizance filed May 12th 1862 was an erroneous and inaccurate statement of the contract entered into by said Nickerson, and Field as his surety, properly ordered and allowed said amended and substituted memorandum of recognizance to be filed and entered of record

as the true recognizance actually entered into by the parties, and obligatory upon them as such.

We see no objection to the recognizance on the ground of misrecital of the offence with which the party was charged. It properly refers to the indictment for the more full description of the same, as did the *mittimus* also.

It is then further contended that the superior court had no authority to require the party to enter into such a recognizance as the present.

It appears that on the day the recognizance was ordered the case was pending in that court, a verdict of guilty having been returned against Nickerson, and exceptions to the ruling of the court in matter of law had been filed and allowed, which exceptions were required by statute to be entered in the supreme judicial court for the Commonwealth, to be holden at Boston.

That at any previous stage of the case before the filing of the bill of exceptions the superior court had power to require the party to enter into a recognizance like the present, we suppose cannot be questioned. That is a court having a criminal jurisdiction extending to most crimes and offences, and, as incident to its jurisdiction, it was fully authorized to take recognizances for the personal appearance of a party charged with an offence within its jurisdiction, during the time and the whole time that such case might be pending before it. In *Commonwealth* v. *Nye*, 7 Gray, 316, this court recognized and applied this doctrine to the court of common pleas, the predecessor of the superior court.

The doubt as to the validity of the present recognizance arises solely from the provisions of Gen. Sts. *c.* 173, § 9, in reference to recognizances required to be taken where the party has, upon conviction by jury in the superior court, filed exceptions in matters of law, and those exceptions are to be heard by this court. If the only recognizance the superior court was authorized to require was that recited in this section, the present one was invalid, and the party is not bound by the same. The form of recognizance there prescribed is a reënactment of Rev. Sts. *c.* 138, § 13, and was exactly adapted to the jurisdiction of the various courts,

and to the course of proceeding in criminal cases removed to this court by bill of exceptions, as the law existed prior to the passage of *St.* 1859, *c.* 196, abolishing the court of common pleas, and creating the superior court with greatly enlarged jurisdiction, and changing essentially the manner in which questions should be brought before this court as a court for hearing exceptions and other matters of law raised in the superior court. Bills of exceptions, instead of being heard before the supreme judicial court for the county of Essex, were to be heard before the supreme judicial court for the Commonwealth at Boston. The case itself was not transferred to that court, but only the question of law raised, and its whole duty was to send a rescript to the superior court, where the case was pending, and where final judgment was to be entered. In this state of the statute law it was assumed, and as we think correctly, that the provisions of Rev. Sts. *c.* 138, § 13, were virtually abrogated, being inconsistent with the whole tenor of *St.* 1859, *c.* 196, in reference to bills of exceptions and the removal of cases.

But it is said that although such might have been the effect of *St.* 1859, *c.* 196, it cannot be so held since the enactment of the Gen. Sts., as the provisions as to the jurisdiction of the superior court, and the Gen. Sts. *c.* 173, were thus all simultaneously adopted, and thereby the latter have revised the provision of the Rev. Sts. *c.* 138. This is so in form, and yet the public documents printed by the legislature in connection with the Gen. Sts. clearly show how this apparent conflict of provisions, on the reënactment of the old statute as to recognizances, happened. The Gen. Sts., as revised and proposed by the commissioners for the sanction of the legislature, were drawn up, reported and published in 1858, at the time of the existence of the court of common pleas, and were properly adapted to the jurisdiction of the various courts as then existing. The *St.* of 1859, abolishing the court of common pleas, and materially changing the jurisdiction of the court and the course of proceedings on bills of exceptions, then just passed, was to be incorporated into the Gen. Sts. before their final adoption and enactment by the

legislature in December 1859, and the attempt was made to insert the necessary new and expunge all old sections which this change required. But this particular provision as to recognizance in cases of bills of exception probably escaped obser/ation, and was not stricken out. Assuming, however, that we are to deal with it as a statute provision unrepealed, yet, if we find it wholly inapplicable to a case like the present, and in conflict with other existing statute provisions, we must treat it as nugatory, or at least as not to be so applied as to defeat the general system prescribed by the statutes regulating the jurisdiction of the various courts in the cases pending before them. The form of the recognizance as required by *c.* 173, § 9, requires the party to recognize " for his personal appearance at the supreme judicial court next to be held for the same county." But that court had no cognizance of this case. The recognizance, if returned and filed there, would have no case there. The case was to continue in the superior court; the question of law raised by the bill of exceptions was to be heard by the supreme judicial court for the Commonwealth sitting in Boston ; and from that court a rescript was to be forwarded to the superior court. All these proceedings might take place before any regular term of the supreme judicial court which might be held in the county of Essex.

In view of the statutes as to the jurisdiction of the superior court, and the entire new system introduced as to retaining the case in that court, notwithstanding a bill of exceptions is allowed, and the further fact that the case was in no event to be transferred to the supreme judicial court for the county of Essex, the court are of opinion that the superior court properly ordered the recognizance in the present form, and that the same is valid and binding upon the parties, notwithstanding the objections urged against it.        *Exceptions overruled.*